UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JEROME DIXON, | ) |
|         Petitioner, | ) |
| v. | ) Case No. 17-cv-1339-SLD |
| THOMAS WATSON, | ) |
|         Respondent. | ) |

**ORDER AND OPINION**

Now before the Court is Petitioner Jerome Dixon's Petition for Writ of Habeas Corpus Pursuant 28 U.S.C. § 2241 (Doc. 1). Also before the Court are Petitioner's Motions to Supplement/Amend his Petition (Docs. 11 and 23). For the reasons set forth below, the Petition (Doc. 1) is DENIED. Petitioner's Motions to Supplement/Amend his Petition (Docs. 11 and 23) are DENIED as futile.

Petitioner has also filed a letter (Doc. 28) requesting copies of every filing in this case. As a courtesy, the Clerk is DIRECTED to mail a copy of the docket sheet along with this order. If Petitioner is seeking a full copy of every document filed in this case, the Court notes that, pursuant to the Judicial Conference of the United States' policy, and in accordance with 28 U.S.C. § 1914, parties are only entitled to receive one free copy of case filings. The Clerk is DIRECTED to send Petitioner information on the costs and process for obtaining these documents.

### BACKGROUND

On December 22, 2011, Dixon pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g), pursuant to a plea agreement before the United States District

1

Court for the Northern District of Illinois. *United States v. Dixon,* Case No. 11 CR 73, Plea Agreement (N.D. Ill.); Resp. at App. 3 (Doc. 10-2). The plea agreement contained a waiver of Dixon's collateral attack rights. Specifically, the plea agreement provided that Dixon "waived his right to challenge his conviction and sentence, and the manner in which the sentence was determined, . . . in any collateral attack or future challenge, including but not limited to a motion brought under [§ 2255]." *Id.* at App. 16.

In the plea agreement, Dixon also admitted that he qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) due to three predicate convictions: (1) a December 11, 1998 conviction for manufacturing/delivering a controlled substance in violation of 720 ILCS 570/401(c)(1) in the Circuit Court of Cook County, Illinois; (2) a June 13, 2001 conviction for aggravated battery of a peace officer, in violation of 720 ILCS 5/12-4(b)(6), in the Circuit Court of Cook County, Illinois; and (3) a July 31, 2003 conviction for manufacturing/delivering a controlled substance, in violation of 720 ILCS 570/401(D). *Id.* at App. 5-6. Accordingly, he agreed that the Armed Career Criminal Act ("ACCA") sentencing enhancement applied, making his statutory imprisonment range 15 years to life imprisonment. *See* 18 U.S.C. § 924(e)(1). Had he not had three predicate convictions, he would have been subject to a statutory maximum of only ten years. *See* 18 U.S.C. § 924(a)(2). On May 14, 2012, the district court sentenced Dixon to 180 months' imprisonment. He did not appeal his conviction or sentence.

On May 14, 2013, Dixon filed his first Motion to Amend, Correct, or Vacate his Sentence Pursuant to 28 U.S.C. § 2255, arguing that he should not have been sentenced as an Armed Career Criminal in light of *Buchmeier v. United States,* 581 F.3d 561 (7th Cir. 2009), and that his attorney was ineffective. *See Dixon v. United States,* Case No. 13-cv-3591, Memorandum and Order, d/e 18 (N.D. Ill. July 28, 2014). The district court denied his motion, finding that his

*Buchmeier* claim was waived by the collateral attack waiver in his plea agreement, and that his ineffective assistance of counsel claim was meritless. *Id.*

After obtaining authorization from the Seventh Circuit, Dixon filed a second § 2255 motion relying on *Johnson v. United States,* 135 S.Ct. 2551 (2015), which held that the residual clause in the definition of violent felony under § 924(e)(2)(B)(ii) was unconstitutionally vague. *See United States v. Dixon*, No. 15 C 10906, 2017 WL 661595, at *1 (N.D. Ill. Feb. 17, 2017). Dixon argued his conviction for aggravated battery of a peace officer under 720 ILCS 5/12-4(b)(6) no longer qualified as a predicate offense for the ACCA enhancement under § 924(e) because it only qualified under the now-unconstitutional residual clause. However, the district court found Dixon's argument was foreclosed by the Seventh Circuit's decision in *Stanley v. United States*, 827 F.3d 562, 564 (7th Cir. 2016), which held that aggravated battery of a peace officer under 720 ILCS 5/12-4(b)(6) remained a violent felony under § 924(e)(2)(B)(i) (the elements clause). *Id.* Accordingly, his motion was denied. *Id.*

Dixon filed this Petition (Doc. 1) pursuant to 28 U.S.C. § 2241 on July 21, 2017, again challenging the use of his aggravated battery of a peace officer conviction as a predicate conviction for his Armed Career Criminal designation. His Petition relies on *Mathis v. United States,* 136 S.Ct. 2243 (2016), to argue to that the Illinois statute is broader than the definition of "violent felony." Respondent filed his response (Doc. 10), arguing that his claim is waived and fails on the merits.

Dixon file a reply (Doc. 11), and included a motion to amend his Petition to add a claim that his controlled substance offenses also should not have been used as predicate offenses in light of *Mathis*. The Court initially denied his motion to amend in an October 3, 2017 Text Order, finding it duplicative of his previous claim. However, the Court vacated this order on

3

March 11, 2019, finding, upon further review, that the claim was, in fact, distinct from his original claim, and ordered Respondent to respond to the Motion to Amend. Respondent filed his response on April 1, 2019. Dixon has not filed a timely reply. This Order follows.

## LEGAL STANDARD

Generally, federal prisoners who seek to collaterally attack their conviction or sentence must proceed by way of motion under 28 U.S.C. § 2255, the so-called "federal prisoner's substitute for habeas corpus." *Camacho v. English*, 16-3509, 2017 WL 4330368, at *1 (7th Cir. Aug. 22, 2017) (*quoting Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012)). The exception to this rule is found in § 2255 itself: a federal prisoner may petition under § 2241 if the remedy under § 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e). Under the "escape hatch" of § 2255(e), "[a] federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998). Thus, the Seventh Circuit has held that "alternative relief under § 2241 is available only in limited circumstances: specifically, only upon showing "(1) that he relies on 'not a constitutional case, but a statutory-interpretation case, so [that he] could not have invoked it by means of a second or successive section 2255 motion,' (2) that the new rule applies retroactively to cases on collateral review and could not have been invoked in his earlier proceeding, and (3) that the error is 'grave enough ... to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding,' such as one resulting in 'a conviction for a crime of which he was innocent.'" *Montana v. Cross*, 829 F.3d

775, 783 (7th Cir. 2016), *cert. denied sub nom. Montana v. Werlich*, 137 S. Ct. 1813, 197 L. Ed. 2d 758 (2017) (*citing Brown*, 696 F.3d at 640).

## DISCUSSION

Respondent argues that Dixon's claims are barred by the collateral attack waiver in his plea agreement, as well as meritless. The Court agrees. Since his claim is barred by his plea agreement, the Court need not address the merits of his claims. *See Mason v. United States*, 211 F.3d 1065, 1069–70 (7th Cir. 2000) (holding it is unnecessary to reach the merits of a claim when a petitioner has waived the right to bring it in his plea agreement). However, for the sake of completeness, the Court also addresses Dixon's ability to proceed under the § 2255(e) savings clause, and finds that he would not be entitled to relief even if his claims were not barred by the collateral attack waiver in his plea agreement.

### A. Dixon Waived His Collateral Attack Rights.

While there are some constitutional limits to what may be bargained for, a plea agreement is a type of contact and is generally enforceable. *See Hurlow v. United States,* 726 F.3d 958 (7th Cir. 2013); *United States v. Bownes*, 405 F.3d 634, 636 (7th Cir. 2005). "In a contract (and equally in a plea agreement) one binds oneself to do something that someone else wants, in exchange for some benefit to oneself. By binding oneself one assumes the risk of future changes in circumstances in light of which one's bargain may prove to have been a bad one." *Bownes,* 405 F.3d at 634. Courts should enforce plea agreements unless the plea agreement itself was involuntary, the defendant argues ineffective assistance of counsel with regard to the negotiation of the plea, the sentencing court relied on a constitutionally impermissible factor such as race, or the sentence exceeded the statutory maximum. *Keller v.*

*United States*, 657 F.3d 675, 681 (7th Cir. 2011); *United States v. Campbell*, 813 F.3d 1016, 1018 (7th Cir. 2016).

Here, Dixon's plea agreement, in relevant part, states:

> defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

Plea Agreement, Resp. at App. 16-17 (Doc. 10-2). Dixon's claims, which rely on *Mathis v. United States,* 136 S.Ct. 2243 (2016)*,* do not fall within the exception in the plea agreement, because *Mathis* has not been "expressly made retroactive by . . . the Supreme Court." *See United States v. Vela,* 740 F.3d 1150, 1154 (7th Cir. 2014) (holding that plea agreement with similar terms waived a sentencing challenge where the Supreme Court decision was not expressly made retroactive). Moreover, Dixon has not alleged a claim of involuntariness or ineffective assistance of counsel with regard to his plea agreement, and the Northern District of Illinois has already upheld the terms of the plea agreement in denying relief on his first § 2255 motion. *See Dixon v. United States,* Case No. 13-cv-3591, Memorandum and Order, d/e 18 (N.D. Ill. July 28, 2014).

Nor does Dixon claim that the sentencing court relied on a constitutionally impermissible factor such as race, or that the sentence exceeded the statutory maximum. Dixon does argue that he should not have been sentenced with the ACCA enhancement under § 924(e) and his sentence, therefore, is in excess of the otherwise applicable statutory maximum of 10 years. *See*

6

18 U.S.C. § 924(a)(2). However, the enforceability exception regarding statutory maximums only applies where the sentencing court disregards the permissible sentencing range that the parties had contemplated. *See, e.g., United States v. Worthen*, 842 F.3d 552, 554 (7th Cir. 2016) (explaining appeal rights cannot be waived with regard to a sentence where "the court disregards [the] permissible sentencing range and imposes a sentence exceeding that which the defendant knew was the harshest penalty he could receive" because "then there is no knowing and intelligent waiver at all."). Here, Dixon understood when he signed his plea agreement and plead guilty that he would be facing a mandatory minimum sentence of 15 years' imprisonment.

Dixon states in his Reply brief that the waiver provision "must yield to 28 U.S.C. § 2255(e)" for the reasons stated in *Webster v. Daniels*, 784 F.3d 1123, 1135-36 (7th Cir. 2016). Reply at 7 (Doc. 11). However, *Webster* did not address waivers of any kind, and provides no support for Dixon's argument. Accordingly, the Court finds that he has waived his right to bring his *Mathis* claims in a collateral attack.

**B. Dixon's Claims Cannot Proceed Under the § 2255(e) Savings Clause.**

Even if Dixon did not waive the right to bring his claim in his plea agreement, Dixon's claim still could not proceed. Dixon's claim relies on *Mathis v. United States,* 136 S. Ct. 2243 (2016). In *Mathis,* Supreme Court examined the enumerated clause and held that Iowa's burglary statute did not qualify as a predicate violent felony under the ACCA because it was broader than the generic offense of burglary in § 924(e)(2)(B)(ii). *Id.* at 2251. *Mathis* set forth the procedure for courts to use to determine whether a statute is broader than the generic version of the offense, highlighting that the modified categorical approach could only be utilized when the statute specified alternative elements for the offense, not merely alterative means. *Id.*

The parties do not dispute that *Mathis* is a case of statutory interpretation. However, whether *Mathis* is a new and retroactive case is not as clear. "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane*, 489 U.S. 288, 301 (1989) (emphasis in original). The Seventh Circuit has not directly addressed the issue of whether *Mathis* announced a new rule that applies retroactively, and district courts in the Seventh Circuit are split on the issue. *Compare, e.g., Pulliam v. Krueger,* No. 16-cv-1379-JES, 2017 WL 104184 (C.D. Ill. Jan. 10, 2017) (finding that *Mathis* was new and retroactive for purposes of meeting the § 2255(e) savings clause); *Wadlington v. Werlich*, No. 17–CV–449, 2017 WL 3055039, at *3 (S.D. Ill. July 17, 2017) (same); *Winters v. Krueger*, No. 217CV00386, 2018 WL 2445554, at *2 (S.D. Ind. May 31, 2018) (same); *with Neff v. Williams*, No. 16–CV–749, 2017 WL 3575255, at *2 (W.D. Wis. Aug. 17, 2017) (*Mathis* "merely reaffirmed its 1990 holding in *Taylor*"); *Robinson v. Krueger*, No. 1:17–CV–01187-JBM, 2017 WL 2407253, at *5 (C.D. Ill. June 2, 2017) (same). The Court declines to reach this issue here because, assuming *arguendo* that *Mathis* is a new retroactive case, Dixon is still not entitled to relief because he has not shown his claim otherwise meets the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention."

    1. <u>Dixon Has Not Shown His Claims Were Previously Unavailable.</u>

Dixon has failed to show that his claim was "previously unavailable" to him—the second prong of the test to determine if § 2255 was "inadequate or ineffective to test the legality of his detention." A claim is previously unavailable "if '[i]t would have been futile' to raise a claim in the petitioner's original "section 2255 motion, as the law was squarely against him." *Montana,* 829 F.3d at 784 (*citing Webster*, 784 F.3d at 1136). *See also, Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2007) ("Only if the position is foreclosed (as distinct from not being supported

8

by—from being, in other words, novel) by precedent . . ." can a petitioner satisfy the second prong of the test). Dixon states in his Petition that "Circuit precedent squarely foreclosed" his claim. Pet. at 11 (Doc. 1). However, he does not cite to any cases or further explain how his claim was foreclosed, nor has the Court located any circuit precedent that foreclosed his claims. Therefore, the Court finds that Dixon has not meet this prong of the test.

  2. <u>Dixon Has Not Shown a Miscarriage of Justice Because There Was No Error in Designating him an Armed Career Criminal.</u>

If Dixon was correct that there was an error in designating him an Armed Career Criminal and that his sentence was wrongly enhanced, he would be suffering from a miscarriage of justice because he would have been facing a maximum sentence of 10 years' imprisonment instead of a minimum sentence of 15 years' imprisonment. *See Narvaez v. United States,* 674 F.3d 621, 627 (7th Cir. 2011) (finding sentencing errors that result in a sentence higher than the statutory maximum sentence qualify as a miscarriage of justice). However, as Respondent argues, there is no miscarriage of justice, because there has been no error.

Dixon cannot show a miscarriage of justice for using his aggravated battery conviction as a predicate offense because the Seventh Circuit's decision in *United States v. Lynn,* 851 F.3d 786 (7th Cir. 2017), forecloses his claim on the merits. In *Lynn,* the Seventh Circuit found that the statute was divisible. *Id.* at 797-98. Illinois courts have found that, "[t]o establish aggravated battery, the State must first prove that the defendant committed a simple battery. That is, the State must establish that the defendant 'intentionally or knowingly without legal justification . . . cause[d] bodily harm . . . or ma[de] physical contact of an insulting or provoking nature with an individual." *Id.* at 797 (citations omitted). The Seventh Circuit found that these are not different means of committing a single element as addressed in *Mathis*, but, "[r]ather, they are elements,

9

one of which must be proved beyond a reasonable doubt in order to sustain a conviction for battery." *Id.* (*citing People v. Nichols*, 366 Ill. Dec. 201, 979 N.E.2d 1002, 1013–14 (2012)). Here, as in *Lynn*, Dixon was charged with battery because he "caused bodily harm." *See* Charging Document, Resp. App. 2 (Doc. 10-1). Accordingly, his prior conviction for aggravated battery of a peace officer was properly used as a predicate under § 924(e).

Dixon's claims of err for using his Illinois controlled substance convictions under 720 ILCS 570/402 fare no better. Dixon's ACCA sentencing enhancement relied on a finding that his two predicate Illinois controlled substance offenses qualified as "serious drug offenses."[1] A serious drug offense is defined as:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or
>
> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

18 U.S.C. § 924(e)(2)(A). To determine whether a predicate conviction qualifies as a "serious drug offense," courts use the categorical approach. *See United States v. Anderson*, No. 18-1548, 2019 WL 1306309, at *4 (7th Cir. Mar. 21, 2019). Under the categorical approach, courts look to: "whether the state conviction can serve as a predicate offense by comparing the elements of the state statute of conviction to the elements of the federal recidivism statute." *United States v.*

---

[1] Respondent's Response (Doc. 25), and to some extent Dixon's Motions (Docs. 11 and 22) mistakenly analyzed the issue as though the relevant definition was for a "felony drug offense." However, "felony drug offense" relates to offenses that qualify for enhancements under 21 U.S.C. § 841. While there is overlap, they are distinct terms. *See, e.g., United States v. Nelson*, 484 F.3d 257, 262 (4th Cir. 2007) ("[T]he definition of "felony drug offense" and "serious drug offense" are dissimilar because the term "felony drug offense" has a broader reach than the term "serious drug offense.") (citations omitted).

*Elder,* 900 F.3d 491, 501 (7th Cir. 2018) (*citing Mathis v. United States*, 136 S.Ct. 2243, 2248–49 (2016)). "If state law defines the offense more broadly than the [federal statute], the prior conviction doesn't qualify as a [predicate offense], even if the defendant's *conduct* satisfies all of the elements of the [federal] offense." *Id.* (*citing United States v. Edwards*, 836 F.3d 831, 833 (7th Cir. 2016)). If a state statute is overbroad, courts may use the modified categorical approach if the statute is divisible to consult certain documents to see which alternative formed the basis of the defendant's conviction. *See Descamps v. United States*, 570 U.S. 254, 257, 133 S. Ct. 2276, 2281, (2013). To determine whether a statute is divisible, courts look to see if there is "a decision by the state supreme court authoritatively construing the relevant statute and establishing which facts are elements and which are means . . . Absent a controlling state-court decision, the text and structure of the statute itself may provide the answer. Finally, failing those 'authoritative sources of state law,' sentencing courts may look to 'the record of a prior conviction itself' for the limited purpose of distinguishing between elements and means." *Elder,* 900 F.3d at 502 (*citing Edwards*, 836 F.3d at 836) (internal citations omitted).

Dixon argues that his Illinois controlled substance convictions should not have been used as ACCA predicate offenses because these convictions could have included "counterfeit" and "analog" substances that are not criminalized under federal law. Dixon was convicted of violating 720 ILCS 570/401(c)(2) in 1998 and convicted of violating 720 ILCS 570/401(D) in 2003. At this time, the Illinois statute provided:

> Except as authorized by this Act, it is unlawful for any person knowingly to manufacture or deliver, or possess with intent to manufacture or deliver, a controlled or counterfeit substance or controlled substance analog. *A violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act.* For purposes of this Section, "controlled substance analog" or "analog" means a substance which is intended for human consumption, other than a controlled substance, that has a chemical structure substantially similar to that of a controlled substance in Schedule I or II, or that

was specifically designed to produce an effect substantially similar to that of a controlled substance in Schedule I or II. Examples of chemical classes in which controlled substance analogs are found include, but are not limited to, the following: phenethylamines, N-substituted piperidines, morphinans, ecgonines, quinazolinones, substituted indoles, and arylcycloalkylamines. For purposes of this Act, a controlled substance analog shall be treated in the same manner as the controlled substance to which it is substantially similar.

. . .

(c) Any person who violates this Section with regard to the following amounts of controlled or counterfeit substances or controlled substance analogs, notwithstanding any of the provisions of subsections (a), (b), (d), (e), (f), (g) or (h) to the contrary, is guilty of a Class 1 felony. The fine for violation of this subsection (c) shall not be more than $250,000:

. . .

(2) 1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof;

. . .

(d) Any person who violates this Section with regard to any other amount of a controlled or counterfeit substance classified in Schedules I or II, or an analog thereof, which is (i) a narcotic drug, (ii) lysergic acid diethylamide (LSD) or an analog thereof, or (iii) any substance containing amphetamine or methamphetamine or any salt or optical isomer of amphetamine or methamphetamine, or an analog thereof, is guilty of a Class 2 felony. The fine for violation of this subsection (d) shall not be more than $200,000.

720 ILCS 570/401(West 1998) (emphasis added) (Dixon's second conviction was in 2003, but there were no relevant changes to the law in this time). As the Illinois statute expressly provides that "[a] violation of this Act with respect to each of the controlled substances listed herein constitutes a single and separate violation of this Act," the Court finds that the statute is facially divisible by drug type. Accordingly, as §§ 401(c)(2) and 401(d) do not refer to "counterfeit substances," Dixon's convictions cannot be overbroad on this basis.

Moreover, Dixon's argument that the Illinois statute is overbroad because it includes controlled substance analogs is meritless because controlled substance analogues are also criminalized under federal law. *See* 21 U.S.C. § 813 ("A controlled substance analogue shall, to the extent intended for human consumption, be treated, for the purposes of any Federal law as a controlled substance in schedule I."); 21 U.S.C. § 802(32) (defining controlled substance analogues); *see also, United States v. Jones*, 882 F.3d 1169, 1171 (8th Cir. 2018) (rejecting argument that inclusion of analogs in 720 ILCS 570/401 made it overbroad for purposes of the career offender designation, and finding "no material distinction between the term 'analog' in 720 ILCS 570/401 and the federal term 'analogue'"); *United States v. Redden*, 875 F.3d 374, 375 (7th Cir. 2017) (holding that 720 ILCS 570/401 is categorically a controlled substance offense for purposes of the career offender enhancement, but not addressing overbreadth questions with regard to controlled substance analogs or counterfeit substances). Accordingly, the Court finds that no error was made in using his Illinois controlled substances convictions as ACCA predicate offenses. The Court, therefore, must deny his Motion to Amend (Doc. 11), as futile.

**C. Dixon's Second Motion to Amend (Doc. 23) is Also Futile.**

Dixon has also filed a second Motion to Amend (Doc. 23). Dixon does not raise a new claim in this motion, but seeks to rely on *Caffie v. Krueger,* 2:17-cv-00487-WTL, Slip. Op. (S.D.Ind. Jan. 25, 2019). The respondent in that case conceded that Illinois statute 720 ILCS 570/407(b)(2) is broader than the definition for felony drug offense under 21 U.S.C. § 802(44), and that court, therefore, granted the petition. Respondent has made no such concession here and this case has no precedential or persuasive value on Dixon's claims. Accordingly, the Court DENIES this Motion to Amend (Doc. 23) as futile as well.

## CONCLUSION

For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Doc. 1) is DISMISSED with Prejudice. Petitioner's Motions to Supplement/Amend (Docs. 11, and 23) are DENIED as futile.

Petitioner has also filed a letter (Doc. 28) requesting copies of every filing in this case. As a courtesy, the Clerk is DIRECTED to mail a copy of the docket sheet along with this order. If Petitioner is seeking a full copy of every document filed in this case, the Court notes that, pursuant to Judicial Conference of the United States policy, and in accordance with 28 U.S.C. § 1914, parties are only entitled to receive one free copy of case filings. The Clerk is DIRECTED to send Petitioner information on the costs and process for obtaining these documents.

This matter is now CLOSED.

Signed on this 7th day of June 2019.

*s/ Sara Darrow*
Sara Darrow
Chief United States District Judge